PEOPLE *v.* KYNERD.

1. CRIMINAL LAW—SEPARATE TRIALS—DISCRETION OF COURT.
   Granting separate trials for jointly indicted defendants is discretionary (3 Comp. Laws 1929, § 17298).

2. SAME—FELONIOUS ASSAULT—SEPARATE TRIALS—PREJUDICE—EVIDENCE—DISCRETION OF COURT.
   In prosecution of appellant and another for felonious assault, denial of appellant's motion for separate trial after both defendants by their separate attorneys had announced themselves ready for trial did not constitute reversible error where sole ground of motion was that offense alleged could not very well have been committed by both defendants acting together

although it was not specified how it was impossible for both to participate, evidence showed codefendant held a bartender while appellant threw beer in his face and inflicted injuries with broken beer glass, appellant filed no affidavit stating facts from which court might determine whether defenses relied upon were inconsistent with each other and that a joint trial might be prejudicial to appellant, and no prejudice is shown to have resulted by refusal of separate trial (3 Comp. Laws 1929, § 17298; Act No. 328, § 82, Pub. Acts 1931).

3. INDICTMENT AND INFORMATION—INDORSEMENT OF NAMES OF WITNESSES AFTER COMMENCEMENT OF TRIAL—PREJUDICE.

Indorsement of names of two witnesses to felonious assault, made after trial had started and after victim of assault had identified them, did not, under all the circumstances, prejudice defense where neither witness was called and appellant's attorney waived production of one of the two and accepted prosecutor's statement that other was out of the State (3 Comp. Laws 1929, § 17254; Act No. 328, § 82, Pub. Acts 1931).

4. SAME—INDORSEMENT OF NAMES OF RES GESTAE WITNESSES—DILATORY MOTION—GOOD FAITH.

Appellant's motion, made after he had rested his case, to require prosecutor to indorse, as *res gestae* witnesses, the names of two men who were seated at beer tavern table where felonious assault is claimed to have occurred, was dilatory where neither the prosecutor nor the police officers had the names of such witnesses, appellant's attorney knew witnesses were available earlier in the trial because of his knowledge of their identity and their presence in the court room on day previous to that on which motion was made, and, after trial court had announced the motion was not made in good faith, the attorney did not seek opportunity to substantiate his good faith nor to show that the witnesses were procurable the same day motion was made (3 Comp. Laws 1929, § 17254; Act No. 328, § 82, Pub. Acts 1931).

5. CRIMINAL LAW—RESTING CASE—REOPENING—DISCRETION OF COURT.

Reopening of a criminal prosecution for taking further testimony after both sides have rested is within the discretion of the trial court.

6. INDICTMENT AND INFORMATION—INDORSEMENT OF RES GESTAE WITNESSES—DISCRETION OF COURT.

It was clearly within the discretion of the trial court to deny defendant's motion that prosecutor be required to produce two witnesses who had been seated at beer tavern table where

felonious assault is claimed to have taken place, where arraignment took place and information was filed 40 days before trial commenced, the names were unknown to the prosecutor and police officers and defendant failed to call attention to need of producing such *res gestae* witnesses until after each side had rested its case (3 Comp. Laws 1929, § 17254; Act No. 328, § 82, Pub. Acts 1931).

7. SAME—INCLUDED OFFENSES—BATTERY.

Where major charge in the information does not include the element of battery, any lesser offense of which battery is an essential element is not included in the offense charged.

8. SAME—INCLUDED OFFENSES—FELONIOUS ASSAULT—INSTRUCTIONS —BATTERY.

In prosecution for felonious assault wherein information did not charge defendant with a battery, it was not error for court to instruct jury that it could find defendant "guilty as charged, guilty of simple assault, or not guilty" and omit assault and battery as one of the lesser offenses· (Act No. 328, § 82, Pub. Acts 1931).

9. CRIMINAL LAW—DISCUSSION IN PRESENCE OF JURY—INDORSEMENT OF RES GESTAE WITNESSES ON INFORMATION.

Attorney for appellant may not complain of ·discussion had in presence of jury as to requiring prosecutor to indorse names of two *res gestae* witnesses upon information where complainant himself provoked the discussion.

BUSHNELL and SHARPE, JJ., dissenting.

Appeal from Ingham; Hayden (Charles H.), J. Submitted September 17, 1945.   (Docket No. 67, Calendar No. 42,649.)   Decided March 5, 1946.

Adolph Kynerd was convicted of assault with dangerous weapon.   Affirmed.

*John Wendell Bird,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Victor C. Anderson,* Prosecuting Attorney, and *John P. O'Brien,* Assistant Prosecuting Attorney, for· the people.

REID, J.   Defendant Kynerd on May 21, 1943, was convicted of the offense of assault with a dangerous

weapon committed on March 5, 1943. He was sentenced on June 4, 1943, to the State prison of southern Michigan for a term of not less than 3 nor more than 4 years. Defendant appeals from the judgment.

Defendant Kynerd, hereinafter referred to as defendant, was tried jointly with John Matheny under Act No. 328, § 82, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–82, Stat. Ann. § 28.277).

Plaintiff's claim is as follows: The two defendants came into the Ford tavern in the city of Lansing on the evening of March 5, 1943; at that time there were about 20 people in the place. As they entered, Theodore Drongowski, the bartender (called Ted), observed them to be in a "more or less" intoxicated condition, considered that defendants should not be served any beer, and so advised them, after they were seated. Defendants arose as though they were about to leave, but defendant Matheny went to the bar, to which Ted had returned, and gave Ted some argument for a couple of minutes; Ted then went on with his work and later noticed defendants seated at another table. Ted then came from the bar and told defendants to leave the place, that he didn't want them to drink beer. After some discussion Matheny hastily drank his glass of beer. Defendant Kynerd began drinking his glass but Ted reached for it to take the glass from him, whereupon defendant threw the beer into Ted's face. Defendant then struck the glass against the table, breaking the glass, and then struck Ted in the face with the broken glass with its sharp and jagged edges. Defendant Matheny was holding Ted when Ted was struck and while he was in a crouching position trying to protect himself from blows.

Due to defendant Kynerd's blow with the broken glass, 23 stitches were required to close the wound about Ted's eye, and Ted remained in the hospital four days. The prosecution further claims that Ted did not strike nor offer to strike either of the defendants on the occasion in question.

Defendant's claim is as follows: He and defendant Matheny had visited one other beer tavern on the evening in question. They went into the Ford tavern and after they had sat down at an unoccupied table and had each ordered a glass of beer, Ted came to their table and informed them they could not have any beer. Thereupon defendants walked to another table where two of their friends were seated and on which there were four glasses of beer apparently ordered by their two friends. Defendant Matheny, before drinking, stepped up to the bar and protested Ted's order. After some argument in which defendant did not take part, defendant Matheny returned to the table, at which the two defendants seated themselves, whereupon Ted came to their table and told them they could not have any beer. Some argument occurred and as defendant attempted to raise the beer glass to his mouth, Ted reached for the glass; defendant stood up at the edge of the table, threw the glass back and thrust it at Ted's face; beer splashed in Ted's face and Ted was struck by the glass and sustained serious cuts.

Defendant contended on the trial that the glass was broken upon the edge of the table, that his intention was merely to throw the beer in Ted's face, and that he did not intend to break the glass, nor to use it as a weapon, nor to cause the injuries that Ted sustained.

Defendant does not make any claim that Ted struck or offered to strike either defendant.

Six questions are stated by defendant as his claims of error.

The first claim of error is based on the trial court's refusal of defendant's motion for a trial separate from defendant Matheny. This claim is without merit. Granting separate trials for jointly-indicted defendants is discretionary. 3 Comp. Laws 1929, § 17298 (Stat. Ann. § 28.1028). We consider the discretion was not abused in the case at bar.

On the day on which the case had been set for a jury trial, prospective jurors were occupying jury chairs, and the prosecutor and both defendants by their separate attorneys had announced themselves ready for trial, whereupon defendant Kynerd moved for separate trial on the sole ground that the offense alleged could not very well have been committed by both defendants acting together. Defendant did not specify just how it was impossible for both defendants to be involved in the commission of the offense.

The testimony showed that defendant Matheny held Ted while defendant Kynerd threw the beer in Ted's face and inflicted the injuries complained of.

Plaintiff's theory was that Matheny aided and abetted Kynerd in the assault. Defendant filed no affidavit with the court stating facts on which the court might determine whether the defenses relied upon were inconsistent with each other, and that a joint trial might be prejudicial to Kynerd.

No prejudice to defendant's case is shown to have resulted by reason of the refusal of a separate trial. See *People* v. *Ellsworth*, 90 Mich. 442; *People* v. *Mullane*, 256 Mich. 54, 56; *People* v. *Garska*, 303 Mich. 313, 318, 319; *People* v. *Burczyk*, 308 Mich. 194, 197.

The second claim of error is based on the trial judge's order that the prosecutor indorse on the information the names of two witnesses, Joe Fineout

and James Burlison. After the jury had been sworn
and the testimony of Ted taken, the prosecuting at-
torney, Mr. Anderson, moved that the names of
these two men, whom Ted as a witness had identified,
be indorsed on the information. Mr. Anderson,
being sworn on demand of defendant Matheny, testi-
fied:

"I had known that somebody by the name of
Fineout may have been a witness, but I was further
informed he was in California. I was so informed
some time ago. I made further inquiry this morn-
ing as to this individual, Burlison. I never heard
his name before. I have examined the transcript of
the testimony which is in my possession, a copy of
it, and his name does not appear in the transcript
to my knowledge. * * * I never heard of the
individual (Burlison)."

Defendant, through Mr. Bird, his attorney, waived
the production of Burlison as a witness, and waived
the question of the indorsement of Burlison's name
on the information. Mr. Bird also announced that
he accepted the prosecutor's statement that Joe
Fineout was in California. Neither of these wit-
nesses was called to the witness stand. No preju-
dice to the defense could well have resulted from the
indorsement of the names on the information, under
all the circumstances.

The third claim of error is that the trial court de-
nied defendant's motion that the prosecutor be
ordered to indorse, as *res gestae* witnesses, the
names of two men who were seated at the table
where the injuries were inflicted on Ted. As applied
to the circumstances of this case, the motion was
dilatory. After the defendant had rested his case,
he moved for the first time that the court direct the
prosecutor to indorse the names of these two wit-
nesses on the information. Defendant claims that

the act for which defendant was tried occurred in the immediate presence of these two men and that they therefore were *res gestae* witnesses. Defendant testified:

"Nobody could have saw it except the two boys sitting at the table. I feel that the only ones in that room who could have seen it was the two men at the table, actually what happened."

The claim of the prosecution is that when defendant was on the stand the prosecution learned for the first time the names of these two witnesses, Jake Taylor and Bill Horton. Ted, a witness for the prosecution, had testified that he did not know who these two men were but considered that he could give the first name of one of them and that it was Jay, apparently referring to Jake Taylor. Neither the prosecuting attorney nor the police officers had their names. See 3 Comp. Laws 1929, § 17254 (Stat. Ann. § 28.980).

During the discussion of the motion, the following occurred:

"*Mr. Anderson:* I will challenge Mr. Bird to answer the question whether or not those witnesses he has referred to were not in court yesterday throughout the entire day.     *     *     *

"*Mr. Bird:* I object to the question directed to counsel for the defense as incompetent and immaterial, even if I was under oath, that is immaterial so far as this motion is concerned. That is no excuse for the prosecutor. In fact if the prosecution knew they were in court all day yesterday, which I am not admitting they were, that is no excuse why he shouldn't have called them."

If Mr. Bird knew these witnesses were available, there seems no good reason why he should withhold that information from the prosecutor, who would thus have been aided in procuring their attendance.

After the prosecution had rested, defendant's attorney, Mr. Bird, in beginning his defense, said,

"We will give you a defense which in our opinion will show to you he did not have the deliberate criminal intent to make out of this glass a weapon and stab Ted, the bartender, in the face. We will demonstrate that, not only from his testimony, but that of Matheny, and will demonstrate it from the testimony of *other witnesses* that so far have *not been called* by the prosecution." (Italics supplied.)

Defendant knew the names of the two *res gestae* witnesses and withheld that knowledge from the prosecution until their names were stated by defendant in his testimony. After defendant Matheny had testified, defendant rested without calling these two *res gestae* witnesses or requesting the indorsement of their names on the information. The discussion on the motion fairly supports the inference that the two *res gestae* witnesses were present in the courtroom on the last day that testimony was taken, that their names *and identity* were known on that day to defendant but their *identity* was then unknown to the prosecution, that the defense had an opportunity to know what their testimony would be and actually did not want them to testify, and that when the arguments to the jury were ready to begin the next morning the witnesses were not then present. Defendant then for the first time moved that the names of the witnesses be indorsed on the information.

The prosecution had no rebuttal. When the defendants rested their case that was the conclusion of the testimony. By resting their case, defendants waived their cross-examination of these witnesses. Reopening of the case the following day for taking further testimony was within the discretion of the court. The court was entitled to know whether Mr. Bird was making this motion merely for the purpose

of the record. After the court had announced his conclusion that Mr. Bird's motion was not made in good faith, Mr. Bird did not request an opportunity to make a further showing which would have substantiated his good faith, nor did he make any showing that attendance of these two witnesses could be procured on the same day that he moved for the indorsement of their names, or at any later day.

Kynerd was arraigned and the information filed April 9, 1943. A month and 10 days later the trial commenced. Obviously defendant's counsel knew from the information and the list of witnesses indorsed thereon that the people were not intending to call either of the two witnesses whose names defendant sought to have indorsed and whom defendant sought after the close of the proofs in the case to have produced as witnesses by the prosecution. Obviously defendant knew that each of these two witnesses were or might be claimed to be *res gestae* witnesses; but defendant's counsel admitted that at no time prior to the trial or during the trial before the close of proofs did he call the prosecuting attorney's attention to the need of producing these two witnesses as *res gestae* witnesses. Under the circumstances above noted the trial court was vested with a measure of discretion in granting or denying defendant's motion that the prosecutor be required to produce the two persons in question as witnesses. See *People* v. *Blue,* 255 Mich. 675, 678; *People* v. *Raider,* 256 Mich. 131, 136. We consider that the trial court did not abuse his discretion and was not in error in declining to order the indorsement of the names of these two men and their production by the prosecutor as witnesses under all the circumstances shown.

The fourth claim of error is based on the court's instruction as to included offenses. The court charged the jury in part as follows:

"You have three possible verdicts, guilty as charged, guilty of simple assault, or not guilty."

There is no merit to defendant's contention that prejudicial error was committed by the trial judge in that he did not in his charge to the jury state that assault and battery was one of the lesser offenses (along with simple assault) included in the major offense of an assault with a dangerous weapon. The major charge in the information does not include the element of battery; and therefore any lesser offense of which battery is an essential element, such as assault and battery, is not included in the offense charged. See *Turner* v. *Muskegon Circuit Judge,* 88 Mich. 359; *People* v. *Ellsworth, supra;* and *People* v. *Andre,* 194 Mich. 524. In the three cases just cited, the charge was assault with intent to do great bodily harm less than the crime of murder. By analogy, a defendant charged with assault with a dangerous weapon could not be convicted of assault and battery unless a battery were charged in the information. In support of his contention that the trial court should have charged that the offense of assault and battery was an included lesser offense, defendant relies upon *People* v. *Burk,* 238 Mich. 485, and the comment on the *Burk Case* in *Fish* v. *People* (C. C. A.), 62 Fed. (2d) 659; but the case of *People* v. *Burk,* as well as the comment in *Fish* v. *People,* are clearly distinguishable from the instant case because reference to the information in the *Burk Case* discloses that it not only charged an assault but also a battery in these words: "(defendant) did make an assault with and by means of a certain dangerous and offensive weapon, to-wit, an iron pipe, and him the said Forrest Foster, did then and there beat, wound, bruise and ill-treat." Since the information in the *Burk Case* charged a battery as well as an assault, the lesser of-

fense of assault and battery was an included offense. But in the instant case since defendant was not charged with a battery in the statement of the major offense, there was not included therein the lesser offense of assault and battery.

The fifth claim of error is predicated on discussion in the presence of the jury on the motion of defendant to require the prosecutor to indorse the names of the two *res gestae* witnesses referred to in the third claim of error. We have quoted some of this discussion and consider the ruling by the trial court correct. Mr. Bird provoked the discussion and is not justified in complaining of the result.

The sixth claim of error is based on denial of defendant's motion for a new trial, which motion was based on the five claimed errors already considered.

A careful reading of the entire record convinces us that no error was committed. The trial was fair. The judgment is affirmed.

Butzel, C. J., and Carr, Boyles, North, and Starr, JJ., concurred with Reid, J.

Sharpe, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice Reid. The record shows that Jake Taylor and Bill Horton were seated at the table when the fracas occurred. They were *res gestae* witnesses. Under 3 Comp. Laws 1929, § 17254 (Stat. Ann. § 28.980), it was the duty of the prosecuting attorney to indorse on the information the names of all known witnesses. In criminal cases the prosecuting attorney should call, if possible, all known witnesses to the transaction. See *People* v. *Vick,* 235 Mich. 475. It is the duty of the prosecuting attorney to indorse on the information the names of all known *res gestae* witnesses. See *People* v. *Keywell,* 256 Mich. 139. In *People* v. *Ken-*

*nedy,* 267 Mich. 430, 435, we said: "Omission to indorse is not lightly to be condoned."

From the syllabus in *People* v. *Quick,* 58 Mich. 321, we read:

"1. The names of all witnesses for the prosecution in a criminal case must be indorsed on the information before the trial or as soon as discovered after it begins; the respondent is entitled to a chance to canvass their character whether they are examined in the main case or on rebuttal."

In *People* v. *Smith,* 257 Mich. 319, defendant was tried on a charge of perjury based on his testimony before a grand jury. The jury was investigating as to the commission of crime in the letting of contracts by the school board in the township of Royal Oak. Lottie Thibos was a member of the school board. Her name was not indorsed on the information. She was called as a rebuttal witness and, over the objection of defendant, was permitted to testify. We there said:

"If Lottie Thibos' name had been given in the bill of particulars as one of the members of the school board to whom the defendant had talked, her testimony would have belonged to the people's case in chief and it would have been necessary to indorse her name on the information. As it was not indorsed and was not mentioned in the bill of particulars, the defendant had no reason to expect that she would be produced as a witness against him. It is apparent that the prosecuting attorney did not know of Mrs. Thibos when he filed the bill of particulars and indorsed the names of other witnesses on the information. But he learned about her during the trial. She was taken before the grand jury and there gave her testimony. It then became his duty to apply at once to the court for leave to amend his bill of particulars and to add her name to the informa-

tion. Instead of taking that course, she was withheld until after the defendant had given his testimony and his case was practically closed. She was then offered, to the defendant's surprise, as a witness for the alleged purpose of impeachment. No request to the court was made to add her name to the information and no excuse appears in the record or in the people's brief for not having done so as soon as her testimony was discovered. In the language of Justice CAMPBELL, 'this was an unfair suppression, in contravention of law.' (*People* v. *Hall,* 48 Mich. 482, 488 [42 Am. Rep. 477].)''

In *People* v. *Raider,* 256 Mich. 131, we said:

''The purposes of the rule are to insure the disclosure of the whole of the *res gestae,* to protect the accused against the suppression of testimony favorable to him, and to give him the benefit of cross examination.''

Mr. Justice REID states, ''The claim of the prosecution is that when defendant was on the stand the prosecution learned for the first time the names of these two witnesses, Jake Taylor and Bill Horton.'' Because of this claim of the prosecuting attorney, Mr. Justice REID excuses the indorsement of their names on the information.

The record shows that an examination was conducted in the lower court resulting in defendant being held for trial, and at that examination the people were represented by Mr. McLean, an assistant prosecuting attorney. Theodore Drongowski, the principal witness for the prosecution, testified on the trial of this case:

''I mentioned at the examination the fact that there were two men, but I didn't mention their names. I mentioned in the examination the fact that two men were sitting at the table where this trouble apparently took place.''

It also appears that these two men were sitting in court during at least a part of the trial and this information was probably known to the prosecuting attorney, Mr. Anderson, who during the argument on the motion for a continuance stated, ''These two men were in court yesterday all day until court adjourned.''

I do not approve of the conduct of defendant's attorney in waiting until all evidence was in before making a motion for the production of these witnesses, but it was the duty of the prosecuting attorney to call these witnesses. Defendant had a right to expect that they would be called and had the further right to cross-examine all *res gestae* witnesses. Nowhere in this record do you find a scintilla of evidence that the prosecuting attorney made any effort to locate or have indorsed on the information the names of these witnesses. The excuse that he did not know the names of these witnesses until the defendant was a witness in his own defense does not excuse the fact that he knew or should have known that there were such witnesses. This information was known to him in ample time to permit him to petition the court to have these names indorsed on the information. The trial court was in error in its failure to grant defendant's motion to have the names indorsed on the information or in lieu thereof a continuance of the cause.

The judgment should be reversed and the cause remanded to the circuit court of Ingham county for trial.

BUSHNELL, J., concurred with SHARPE, J.