*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID EDWARD DAVIS,

        Defendant-Appellant.

UNPUBLISHED
June 29, 2023

No. 360300
Jackson Circuit Court
LC No. 2019-004429-FC

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83, and two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. Before trial, defendant pleaded guilty to being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; discharge of a firearm toward a building, MCL 750.234b; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 25 to 50 years' imprisonment each for the counts of assault with AWIM and AWIGBH and 10 to 30 years' imprisonment each for the convictions of felon-in-possession and discharging a firearm toward a building, to be served concurrently. The trial court also sentenced defendant to two years' imprisonment for his felony-firearms conviction to be served consecutively to defendant's corresponding conviction of discharging a firearm toward a building. Defendant raises claims arising from the admission of evidence pertaining to prior convictions as well as alleged instructional errors. We affirm.

## I. BACKGROUND

Defendant's convictions stem from an attempted "suicide by police."

Defendant placed a fabricated domestic disturbance call to the police, and when officers responded to the call they found two residents standing outside the house oblivious to any domestic disturbances. Suspicious of the call, Officer Bradley Elston approached the front door and knocked; defendant immediately fired a shotgun at the front door from inside the house. Defendant fired a second shot through a window and struck a tree behind which Sergeant Timothy Hibbard

had taken cover; the second shot also rained projectiles down around the feet of Officer Scott Goings. Finally, defendant fired a third shot that struck a tree across the street, behind which Trooper Tyler Bacon had taken cover. After several hours of speaking with a crisis negotiator, defendant exited the house and surrendered to the police. No officers were shot during the standoff, and defendant testified at his trial that he had been suicidal, and his intent—rather than to harm anyone—was to bait the police into shooting him.

Defendant was convicted and sentenced as detailed above, and this appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to reversal of his convictions because defense counsel rendered ineffective assistance by introducing evidence of his prior convictions at trial and by failing to request a jury instruction on simple assault and battery. We disagree.

A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's findings of fact for clear error, while it reviews questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. A defendant must "overcome the strong presumption that counsel's performance was born from a sound strategy." *Id.* at 52. However, this Court "cannot insulate the review of counsel's performance by calling it trial strategy." *Id.*

## A. PRIOR CONVICTIONS

Defense counsel's decision not to object to the admission of defendant's 2011 convictions for larceny in a building and unlawfully driving away in a vehicle was error because there was no valid reason not to raise an objection and attempt to exclude it. Defense counsel's decision to introduce evidence of defendant's 1983 conviction for uttering and publishing was also error because the evidence was plainly inadmissible. However, reversal is unwarranted because the errors' impact on the trial was minimal.

Evidence of prior convictions may be admitted for the limited purpose of attacking a witness's credibility if the crime contained an element of dishonesty or an element of theft. MRE 609(a). If the conviction was of a theft-based crime, it must have been punishable by more than one year's imprisonment, and the court must determine "that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect." MRE 609(a)(2). When assessing a crime's probative value, "the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity," and when assessing prejudicial effect, "the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify." MRE 609(b). Finally, evidence of a conviction is inadmissible

if more than ten years have elapsed since the later of the date of the conviction or the date of the defendant's release from prison.  MRE 609(c).

## 1.  RELEVANT TESTIMONY

Prior to the start of the trial, defense counsel stipulated to the admissibility of the three prior convictions noted above.  On direct examination, defense counsel asked defendant about the 1983 conviction:

> *Q*.  Do you remember previously being convicted of uttering and publishing?
>
> *A*.  Yup.
>
> *Q*.  Okay.
>
> *A*.  Writing a bad check.
>
>        \*   \*   \*
>
> *Q*.  Okay.  Can you tell me what happened?  What, what, what did you do that led to that conviction. [sic]
>
> *A*.  I, I, I went to one of the bars in Jackson and, and cashed a check and it come back non-sufficient funds so then—
>
> *Q*.  Let me just stop you there.  So I, just so I'm clear, you, you wrote a bad check to a, a bar.
>
> *A*.  Mm-hm.
>
> *Q*.  And that, that check was drawn on your bank account.  Is that correct?
>
> *A*.  Yup.
>
> *Q*.  And then the check was returned by the bank because there wasn't enough money in your account?
>
> *A*.  Mm-hm.

Defense counsel then asked defendant during direct examination to explain the 2011 larceny in a building conviction:

> *Q*.  You, you, you also were convicted before of a crime that's called larceny in a building.  Is that true?
>
> *A*.  Yup.

*Q.* Okay. Can you tell, tell me what happened? What did you do with respect to that crime?

*A.* I was involved in a relationship and I used to store my tools in my girlfriend's shed out of town. And so when we ended the relationship she told me I couldn't have my stuff out of the shed so I just waited until she went to work and I went in the shed and took my tools back.

*Q.* Okay.

*A.* And then she called the police when, when I, when I left she called the police and reported that I had broke into her shed.

\* \* \*

*Q.* You did admit that you went in there without her permission. Is that correct?

*A.* Yeah, I, I admit.

Finally, defense counsel asked defendant to explain his 2011 unlawfully driving away conviction:

*Q.* You, do you remember being convicted of the crime called unlawful driving away?

*A.* Yeah. Joy riding.

*Q.* Okay. Can you, can you tell me what happened in that case?

*A.* We went, we, me and, me and a [friend] of our, ours went to the store and a guy left the keys in his car so we hopped in and went for a ride.

*Q.* Okay. And, and you didn't have permission to—

*A.* I didn't have, we didn't have permission, no.

The prosecution then followed up on these topics during cross-examination:

*Q.* Uttering and publishing being a crime that involves making a false statement on a check or some kind of note. A false signature that wasn't your own, false date, false amount, something like that. But when you were talking about it you were describing not having enough money in your bank account. That's a completely different charge. That's non, non-sufficient funds or NSF. So what you're saying is you pled to an uttering and publishing?

*A.* Yup.

\* \* \*

*Q.* "[Y]ou're standing here today in front of this jury and you're saying you didn't really commit a larceny because that was all your property that you took. You didn't take anyone else's property.

*A.* Nope.

*Q.* So you're telling these people—so even though you pled to a larceny in a building in 2011 now you're telling the jury you didn't really commit a theft?

\* \* \*

*A.* No. The property was mine.

\* \* \*

*Q.* Unlawful driving away a motor vehicle. That was in 2012.

*A.* Yup.

*Q.* You referred to it as joy riding. Correct?

*A.* Mm-hm.

*Q.* It's not the same as joy riding. Do you understand? It's actually a theft of a motor vehicle.

*A.* Yes.

*Q.* It's a different statute.

*A.* That's what they charged me with. Yeah.

Defendant argues that his trial attorney rendered ineffective assistance by failing to seek exclusion of evidence pertaining to these crimes.

### 2. 1983 CONVICTION

The 1983 uttering and publishing convictions were clearly inadmissible because of the passage of time. As noted above, evidence of prior convictions is inadmissible if more than 10 years elapsed since the later of the conviction date and release date. MRE 609(C). It is undisputed that defendant was convicted of uttering and publishing in 1983 then released in 1986. Accordingly, evidence of this conviction ceased to be admissible in 1996, so it was an error to admit it at a 2021 jury trial. Therefore, trial counsel's stipulation to this evidence's admissibility was an unprofessional error that satisfied the first prong of an ineffective assistance claim.

### 3. 2011 AND 2012 CONVICTIONS

Defense counsel erred by stipulating to the admission of the 2011 and 2012 convictions because there were valid questions about their probative value, and there was no valid strategic reason not to attempt to exclude them.

It is undisputed that these crimes had elements of theft and that they fell within the 10-year timeframe. The prosecution argues that the trial court made comments implying that it would admit evidence pertaining to those two convictions, but that is an assumption we will not make. Had defense counsel objected, the court might have been persuaded against the admission of the evidence. To be clear, we are not saying that the court did or did not abuse its discretion by admitting the evidence; rather, we're saying that the admissibility of the evidence was debatable, and there was no reason not to attempt to exclude it.

Defense counsel should have raised several arguments against the admissibility of these convictions. The probative value of prior convictions should be assessed by considering only the age of the conviction and the extent to which they are illustrative of the defendant's veracity. MRE 609(b). Both convictions were nearly a decade old. The only evidence regarding the larceny conviction suggested that defendant was attempting to take property that he viewed as his own, and there was no evidence that he used trickery or deceit to carry out the crime. The unlawfully driving away conviction was a crime of opportunity that likewise was committed without untruthfulness. Prejudicial effect is evaluated based on the similarity to the charged offense and, if the evidence causes the defendant to elect not to testify, how this impacted the decision process. MRE 609(b). Defendant did testify and, because the prior crimes were wholly dissimilar from the one charged, this mitigated the risk of a propensity inference. However, admission of prior convictions always creates a risk of an inference of general lawlessness. Because there was little probative value arising from the convictions, it is reasonable to believe that the judge might have sustained an objection to their admission had such an objection been raised.

## 4. PREJUDICE

While defense counsel erred by stipulating to the admission of testimony regarding these convictions, reversal is not warranted because the impact of this error on the trial was minimal and did not affect the outcome.

For the purposes of this analysis, we will assume *arguendo* that the trial court would have excluded evidence of the 2011 and 2012 convictions had defense counsel so requested. The defense in this case hinged on whether the jury believed defendant's testimony that he did not intend to shoot anybody and that he was instead trying to get the officers to shoot him. None of the relevant crimes involved any violence, so the jury would not have inferred from them that defendant had a violent disposition. The record suggests that, while the crimes did involve dishonest conduct, they did not involve any actual lies, and this weighs against a conclusion that the testimony caused the jury to infer that defendant lied.

Moreover, the testimonial and physical evidence presented against defendant was substantial and far outweighed the two brief exchanges regarding his criminal history. Even without defendant's testimony about his criminal record, the jury still heard testimony from the police officers describing the unusual nature of the domestic disturbance call to 911, the string of gunshots that started to ring out immediately after Officer Elston approached the house, and the

trajectory of the three gunshots. Defendant himself admitted that he waited for Officer Elston to approach the front door before he started shooting. The shotgun wad was found embedded in the interior woodwork of the front door and the police body camera footage supported the prosecution's theory of the case that defendant intentionally shot at the police.

Finally, defendant's prior convictions were of little import to the prosecution's case. The prosecution did question defendant on cross-examination about the prior convictions, but it did not incorporate the prior convictions into closing arguments. Instead, the prosecution asked the jury to determine defendant's intent based on his actions during the incident. The prosecution argued that defendant's intent to kill the officers was evidenced by the direction that he pointed the barrel of the gun and the fact that he waited for an officer to walk up and knock on the door before firing from the other side of the door. Additionally, the prosecution emphasized that defendant himself stated on his call to the crisis negotiator that he fired his gun "at a cop."

For these reasons, defendant cannot establish a valid claim of ineffective assistance of counsel stemming from the admission of evidence pertaining to defendant's prior convictions.

## B. INSTRUCTION REGARDING LESSER-INCLUDED OFFENSE

Defendant's argument that defense counsel erred by failing to request an instruction on the lesser-included offense of assault and battery is without merit because the governing caselaw concludes that assault and battery is not a necessarily included lesser offense of AWIGBH.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled on other grounds *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003).

Defendant relies on recent cases before our Supreme Court in which the Court assumed, without deciding, that assault and battery is a lesser included offense of AWIGBH to support this claim of error. In *People v Fox*, 507 Mich 936, 936; 957 NW2d 828 (2021), the Supreme Court held that a defendant was denied a fair trial because the trial court denied the defendant's request for a jury instruction on assault and battery. The Supreme Court assumed that assault and battery was a lesser included offense of AWIGBH because the prosecution waived the issue when it conceded that argument in the trial court. *Id*. The Supreme Court cited *People v Haynie*, 505 Mich 1096; 943 NW2d 383 (2020), a case in which the Court also assumed that assault and battery was a lesser included offense of AWIM because the prosecution conceded the issue, to support its conclusion. *Fox*, 507 Mich at 936. Presuming that assault and battery was a lesser included offense, the Supreme Court explained that the trial court erred when it denied the jury instruction in reliance on the prosecution's argument that the intent element of AWIGBH was not disputed at trial. *Id*. However, neither *Fox* nor *Haynie* answer the question whether assault and battery is a lesser included offense of AWIM or AWIGBH.

The relevant caselaw that addresses this issue is *People v Kynerd*, 314 Mich 107; 22 NW2d 90 (1946). In that case, the Supreme Court held by analogy that assault and battery was not a lesser included offense of assault with a dangerous weapon because battery was *not* an element of AWIM. *Id*. at 117. Notably in *Haynie*, Justice Clement encouraged the Court to reconsider whether *Kynerd* was correctly decided, *Haynie*, 505 Mich at 1096 (CLEMENT, J., concurring), but the Court did not overrule the decision. Unlike *Fox* or *Haynie*, the prosecution in this case did not concede that assault and battery is a lesser included offense of AWIGBH. This Court is bound by the Supreme Court's decision in *Kynerd*. See *People v Walker*, 330 Mich App 378, 386 n 3; 948 NW2d 122 (2019). Therefore, defendant was not entitled to a jury instruction on assault and battery as a lesser included offense of AWIGBH.

Because defendant was not entitled to a jury instruction on assault and battery as a lesser included offense, defense counsel was not ineffective for failing to request the instruction because defense counsel is not ineffective for failing to advance meritless arguments. See *Ericksen*, 288 Mich App at 201.

### III. JURY INSTRUCTION ON TRANSFERRED INTENT

Defendant argues that it was inappropriate to instruct the jury on the doctrine of transferred intent because none of the officers were struck by defendant's gunshots and that the doctrine of transferred intent requires that the victim be battered. We disagree.

A claim of instructional error involving a question of law is reviewed de novo. *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009).

Criminal defendants have "the right to have a properly instructed jury consider the evidence against him." *Mills*, 450 Mich at 80; see also US Const, Ams VI, XIV; Const 1963, art 1, § 20. "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). "Pertinent portions of the instructions approved by the . . . Committee on Model Criminal Jury Instructions or a predecessor committee must be given in each action in which jury instructions are given if (a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." MCR 2.512(D)(2)

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citations omitted). The doctrine of transferred intent is applicable to AWIM. *People v Lawton*, 196 Mich App 341, 350-351; 492 NW2d 810 (1992). In the context of assault, the Michigan Jury Instruction on transferred intent provides: "If the defendant intended to assault one person, but by mistake or accident assaulted another person, the crime is the same as if the first person had actually been assaulted." M Crim JI 17.17.

Defendant argues that "the doctrine of transferred intent should not apply where the complainant is not struck because an AWIM or [AWIGBH] conviction has to do with a defendant's state of mind and a battery is unnecessary to complete these offenses." Defendant's argument is self-defeating; because a battery is unnecessary to complete these offenses, it is unnecessary for

someone to be battered for intent to transfer. It is well-established that an assault is "unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Grant*, 211 Mich App 200, 202; 535 NW2d 581 (1995) (quotation marks and citation omitted). The evidence in this case established that, regardless of whom defendant intended to harm with any given shot, all four officers were placed in reasonable apprehension of immediately being battered, and defendant intended that his actions cause death or great bodily harm. In particular, the second shot struck the tree that Sergeant Hibbard was standing behind while projectiles from the shot landed around Officer Going's feet. Thus, a rational fact-finder could find that defendant's intent was transferred.

Defendant raises the example of *Lawton* to support his argument. In that case, the defendant shot at a man whom he was chasing through a house. *Lawton*, 196 Mich App at 345. The defendant was seemingly unaware of two other people who were present in the house, but hidden in a closet, and one of the two people hiding in the closet was struck twice by bullets penetrating the walls. *Id.* at 345, 351. On appeal, the defendant argued that insufficient evidence was presented at trial to convict him of three counts of AWIM because he had no intent to kill the people hiding in the closet. *Id.* at 350. This Court affirmed all three convictions, explaining that his intent to kill the man he was chasing transferred to the people hiding in the closet. *Id*. *Lawton* does not support defendant's argument. The defendant in that case was convicted with three counts of AWIM, despite only striking one person with two bullets. *Id*. While a victim in *Lawton* was actually struck, the opinion was not predicated on a battery occurring. Instead, the battery was merely evidence of AWIM. In our view, *Lawton* stands for the proposition that when a defendant attempts to murder one person and, as a result, others are placed in reasonable apprehension of being inflicted by the same type of harm, the defendant's intent to kill transfers to all those whom are placed in such apprehension.[1]

We conclude that the trial court did not err by instructing the jury on the doctrine of transferred intent because a completed battery is not necessary for the application of the doctrine.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[1] A prior panel of this Court similarly construed *Lawton* in the context of another case in which the defendant fired at multiple police offices without striking any of them. *People v Tolbert*, unpublished per curiam opinion of the Court of Appeals, issued December 13, 2021 (Docket No. 298159), pp 1-3. Unpublished opinions of this Court are not binding, but may be considered for their persuasive value. *People v Kloosterman*, 296 Mich App 636, 641 n 2; 823 NW2d 134 (2012).