*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES JASON ROBINSON,

Defendant-Appellant.

UNPUBLISHED
November 9, 2023

No. 361467
Arenac Circuit Court
LC No. 21-004325-FC

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Defendant was charged in a second amended information[1] with unlawful imprisonment, MCL 750.349b; larceny less than $200, MCL 750.356(5); assault with intent to murder, MCL 750.83; assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; and assault with intent to commit great bodily harm by strangulation, MCL 750.84. A jury found defendant guilty of unlawful imprisonment, larceny less than $200, and AWIGBH. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 228 months to 40 years in prison for the unlawful imprisonment conviction, 93 days in jail for the larceny less than $200 conviction, and 152 months to 40 years in prison for the AWIGBH conviction. Defendant appeals as of right. We affirm.

## I. BACKGROUND FACTS

According to the victim, she and defendant were in a dating relationship and had a child together. She was pregnant with another of defendant's children when she and defendant secured a motel room at the In Town Inn in Standish on January 13, 2021, to "get away" for a few days from the drugs in the town in which they lived. She had been "clean" from heroin for nine days. At about 6:00 p.m. on January 13, defendant began abusing the victim. Defendant hit the victim with an open hand and a closed fist and kicked her. He also put the victim in a headlock from

---

[1] Defendant also was originally charged with attempted murder, MCL 750.91. That charge was dismissed by the prosecution.

behind with his arm around her neck, putting pressure on her throat. He put her face down on the bed so that her face was pushed into the blankets and her head was shoved into her chest. The victim had trouble breathing. She told defendant, "Stop. Please stop." The victim did not remember what defendant said while assaulting her because her "adrenaline was going." She estimated that defendant assaulted her on and off for a couple of hours. The victim testified that defendant locked the door and put himself in front of the door. A couple of times he pushed her onto the bed.

According to the victim, at some point the owner of the In Town Inn, Sandeep Singh, came to the room and told her and defendant that they were being too loud, acting crazy, and disrupting others; Singh did not call 911. Defendant left the room for a short period of time and came back before leaving again.[2] The victim called several people but was unable to secure a ride home.

Defendant returned to the room at 5:22 a.m. and begged the victim to let him into the room. He appeared to be manic. The victim did not want to let defendant back into the room and repeatedly told him to calm down. Because it was cold outside and defendant was not appropriately dressed for the weather, the victim let him in the room.

Defendant lay down on the bed closest to the door. Defendant kept asking to go through the victim's phone. Events began to escalate again when the victim would not allow defendant to go through her phone and refused to lie down with him. The victim testified that she did not try to leave at that point because she believed that defendant would block the door if she attempted to leave. She believed that if she attempted to escape, defendant would hurt her in the few seconds it would take to unlock the door.

Defendant again put the victim into a headlock, wrapping his arm around her neck and pushing her head down into the bed. The victim had difficulty breathing when defendant's arm was around her neck and she felt she was close to blacking out. Defendant was punching her. She was scared. After being released from the headlock, the victim went toward the door, and defendant stood in front of the door in a "very threatening stance" and said, "[D]on't even try it."

The victim ended up sitting in one of the two chairs that was farthest from the door. Defendant began to "pound" the victim. He was doing "uppercuts" to her face and kneeing her in the face. The victim, being pregnant, put her leg and arm up to protect herself. The victim became dizzy during the last couple of times defendant kneed her in her face. She could feel her face swelling. She thought that defendant was going to kill her. She did not remember what defendant was saying at the time because she was not paying attention to him. Defendant was in front of the door at the time and she "knew for a fact" that she could not get out the door.

At some point while defendant was punching and kneeing the victim in the face, the victim "ended up" with the lamp from the table. She pushed defendant back a bit with the lamp and then hit him with it, and while doing so she knocked out the nearby glass window with the lamp. She

---

[2] Evidence was later produced that established that defendant left the room at 12:20 a.m. on January 14, returned at 12:40 a.m., left again at 12:49 a.m., returned at 5:22 a.m., and left again at 6:30 a.m.

pulled the table between herself and defendant and climbed out the broken window. As the victim was leaving, she saw defendant leave the room. Defendant said, "please don't do this. I'm going to go to jail." The victim saw defendant flee down a back street. He took the victim's cellular phone with him when he fled. The defendant eventually gave the phone to a friend to be returned to the victim.

The victim was "bleeding really bad" and was frantic when she went about three doors down to the motel's office while saying "I need the police." Singh came to the door, gave the victim a towel, and called 911. The victim's exit out of the window was captured on the motel's surveillance video; the video was played for the jury. The victim was taken by ambulance to the emergency room at the hospital in Standish. According to the victim, she had extensive bruising to her face, and hospital staff thought her nose was possibly broken. She received stitches for cuts on her ankle and hand and was released.

The victim testified about three previous incidents of domestic violence by defendant. In December 2018, the victim was in the passenger seat of their truck and defendant was outside the truck. The victim was going to leave and "said something." Defendant backhanded her in the mouth and claimed that he threw electrical tape into the truck. In May 2020, the victim and defendant were arguing and defendant started to get violent. The victim left the house and was walking across the street to her aunt's house. Defendant followed her and punched her in the back of the head as she was going through the door. In December 2020, defendant was beating the victim at their house and so she ran across the street and knocked on her aunt's door. By the time her aunt came to the door, defendant had dragged the victim violently while "bear hugging her very tight and hitting her" as he pulled her across the street back to their house.

Katherine Geiger, an employee with Home Confinement Incorporated, a GPS and alcohol monitoring company, testified that a January 14, 2021 daily violation summary report generated by the company showed that defendant, who was wearing a GPS ankle monitor, or tether, left the motel location at 12:20 a.m. and went to a gas station. He returned to the motel at 12:40 a.m., and left again at 12:49 a.m. and went to a residence on Elm and Grove, arriving at 12:55 a.m. Defendant left the residence at 5:22 a.m., and arrived at the motel at 5:52 a.m. He left the motel at 6:30 a.m., and arrived back at the residence at 6:36 a.m. The tether was removed from defendant's ankle that morning and was later found.

Arenac Sheriff's Deputy Christopher Ochab arrived at the hospital shortly after the 6:31 a.m. dispatch. The victim was very emotional, very scared, and appeared as though she had been through a lot of trauma. Deputy Ochab took photos depicting the victim's injuries, including bruising, swelling, and red linear marks on her left neck. Deputy Ochab testified that linear marks are consistent with strangulation. After taking the victim's statement and learning that the suspect was her boyfriend and that he was wearing a tether, Ochab located the tether, which had been stuffed in the handle of a garbage dumpster. Ogemaw County sheriff's deputies took defendant into custody several weeks later.

Defendant moved for a directed verdict of all charges except the charge of AWIGBH by strangulation. The trial court denied the motion. The jury found defendant not guilty of assault with intent to murder and AWIGBH by strangulation, and guilty of unlawful imprisonment, larceny less than $200, and AWIGBH.

## II. OTHER ACTS

Defendant argues that the trial court erred by allowing the prosecution to present other-acts evidence of domestic violence under MCL 768.27b. We disagree.

"[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principled outcomes." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011). MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

An alleged evidentiary error must be considered "in the context of the untainted evidence," and "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks and citation omitted).

This Court reviews unpreserved issues, constitutional and nonconstitutional, for plain error affecting substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). To prevail, a defendant must show that an error occurred, that the error was clear or obvious, and that the plain error affected a substantial right. *Id*. Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *People v Moorer*, 262 Mich App 64, 68; 683 NW2d 736 (2004).

MCL 768.27b(1) provides:

> Except as provided in subsection (4),[3] in a criminal action in which the defendant is accused of an offense involving domestic violence[4] or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

---

[3] MCL 768.27b(4) provides that evidence of an act occurring more than 10 years before the charged offense is generally inadmissible under MCL 768.27b, with enumerated exceptions.

[4] Defendant does not contest that he was accused of offenses involving domestic violence.

Evidence introduced under MCL 768.27b may be considered to prove a defendant's character or propensity, so long as the evidence is relevant and does not violate MRE 403. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." When making its determination under MRE 403, the trial court may consider the following nonexhaustive list of factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012) (citations omitted).]

When applying MRE 403 to evidence admissible under MCL 768.27b, the trial court must weigh the propensity inference in favor of the evidence's probative value, rather than its prejudicial effect. See *id*. at 487. "The unfair prejudice language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). In other words, unfair prejudice refers to a situation where "there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (quotation marks and citation omitted).

The prosecution notified defendant of its intent to introduce evidence of other acts of domestic violence under MCL 768.27b. The notice indicated that defendant was charged with crimes involving domestic violence, that the victim was defendant's girlfriend, and that they had two children together and had resided together. The notice also indicated that the victim would testify regarding past domestic violence incidents as follows: (1) in July 2018, defendant (a) backhanded her while in their truck, (b) grabbed her by her hair and pulled her to the ground and dragged her toward the door of a house, and (c) grabbed her hair and pulled it while she was driving in her truck; (2) in May 2020, defendant (a) hit her in the back with a closed fist while she was trying to get inside her aunt's residence, and (b) had been beating her almost daily for the past three years; and (3) on December 6, 2020, defendant struck her above her right eye with a closed fist and, when she fell while trying to escape, defendant kicked her in the abdomen.

Defense counsel objected to the prosecution's notice during a motion hearing and status conference. Defense counsel argued that the probative value of the other-acts evidence was substantially outweighed by the prejudicial effect of the evidence and that the evidence was therefore inadmissible under MRE 403. The trial court noted that under MCL 768.27b, the other acts of domestic violence were admissible if not otherwise excluded under MRE 403, and the propensity inference of the evidence must be weighed in favor of its probative value over its prejudicial effect for purposes of MRE 403 pursuant to *Watkins*. The trial court ruled that the prosecution could present evidence of other acts as described in the notice, with the exception that the court precluded the prosecution from presenting evidence that defendant beat the victim for the past three years because the evidence was vague. The trial court provided a detailed rationale for its finding that the evidence was admissible.

Again, MCL 768.27b allows the admission of evidence of prior domestic violence to demonstrate a defendant's propensity to commit the same act. *Railer*, 288 Mich App 219-220. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. This Court has recognized that introducing prior acts of a similar nature to the charged crimes gives juries "the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). The other-acts evidence was relevant because it tended to show that it was more probable than not that the victim was telling the truth in describing the assaults by defendant, and whether she was telling the truth had significant probative value in determining whether defendant committed the charged assaults. See *People v Lowrey*, 342 Mich App 99, 118; 993 NW2d 62 (2022) (concluding that other-acts evidence was especially probative because it showed the defendant's pattern of prior abuse and "that he did not take 'no' for an answer").

Regarding the balancing test under MRE 403, this Court has recognized that most evidence presented against a criminal defendant is damaging and prejudicial. *Railer*, 288 Mich App at 220-221. Here, the trial court made specific findings regarding each of the *Watkins* factors, and the findings are supported by the evidence. Moreover, the factors weigh in favor of allowing the evidence of the prior domestic assault incidents. The incidents and the charged acts are similar. The incidents occurred within a three-year period, there was no suggestion of an intervening act, no evidence was presented to challenge the reliability of the victim's testimony regarding the prior incidents of domestic violence, and the evidence was not cumulative. The admission of the other acts of domestic violence against the victim revealed a pattern, provided a more complete picture of defendant's history, was relevant to show that he had a propensity to assault the victim, and the "prejudicial effect of [the] other-acts evidence did not stir such passion as to divert the jury from rational consideration of [defendant's] guilt or innocence of the charged offenses." *Cameron*, 291 Mich App at 611-612. Therefore, the trial court did not abuse its discretion by admitting evidence of defendant's prior domestic assaults on the victim.

Defendant raises a claim of instructional error regarding the other acts of domestic violence that is not presented in his statement of this issue. We decline to consider defendant's argument regarding the jury instruction because it was not set forth in the statement of questions presented. See MCR 7.212(C)(5); *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009).

Finally, defendant briefly asserts that MCL 768.27b is unconstitutional because the use of propensity evidence in cases involving domestic violence is fundamentally unfair and violates his right to due process. He states that it is "violative of due process to uproot the rules of evidence from their justificatory purposes to accomplish an agenda that furthers prosecution of domestic violence in a way that is unfair to criminal defendants." Defendant's argument, which is unpreserved because it is raised for the first time on appeal, see *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), does not recognize the Legislature's policy choice to allow juries to consider evidence of other acts for propensity purposes in certain cases. See *Cameron*, 291 Mich App at 609-610. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts

evidence." *Bugh v Mitchell*, 329 F3d 496, 512 (CA 6, 2003).[5]  Furthermore, evidence offered under MCL 768.27b is subject to the requirement that the evidence be relevant and the requirement that its probative value not be substantially outweighed by the danger of unfair prejudice.  These procedural safeguards are considered sufficient to protect a defendant's right to due process and a fair trial.  See *United States v LeMay*, 260 F3d 1018, 1026 (CA 9, 2001).  Defendant has not demonstrated plain error.

## III.  TETHER EVIDENCE

Defendant argues that the trial court erred by allowing the prosecution to present evidence that he wore a GPS ankle monitor, i.e., a tether, on the date in question.  We agree but conclude that the error was harmless.

A trial court's decision on a motion in limine is reviewed for an abuse of discretion.  *People v Langlois*, 325 Mich App 236, 240; 924 NW2d 904 (2018).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Both the victim's testimony and the surveillance video from the motel placed defendant at the motel on the date of the incident, and defense counsel conceded during his opening statement that defendant was at the motel.  While the tether evidence corroborated the victim's testimony that defendant fled the motel after the incident and was relevant to defendant's consciousness of guilt, her testimony was corroborated by the surveillance video of defendant leaving the motel.  The tether evidence had some tendency, however minimal, to make it more probable that defendant fled the scene than it would be without the evidence.  Thus, it was relevant under MRE 401.

However, we agree with defendant that the evidence was not admissible under MRE 403.  The evidence was a needless presentation of cumulative evidence in light of the victim's testimony and the surveillance video evidence.  Additionally, although the jury was not advised as to why defendant was on a tether, admission of this evidence did prejudice defendant to some extent because it is common knowledge that persons convicted of crimes and those awaiting trial on criminal charges are tethered.  Therefore, we conclude that the trial court abused its discretion by failing to exclude the tether evidence under MRE 403.

The error, however, was harmless.  "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."  *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).  "[T]he appropriate

---

[5] Caselaw from federal circuits is not binding upon this Court, but may be considered as persuasive authority.  *Johnson v Vanderkooi*, 502 Mich 751, 764 n 6; 918 NW2d 785 (2018).

inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Lukity*, 460 Mich at 495 (quotation marks and citation omitted). The burden is on the defendant to prove the error "resulted in a miscarriage of justice." *Id*. (quotation marks and citation omitted).

There was overwhelming evidence of defendant's guilt. The victim testified that defendant punched her with closed fists and open hands over several hours, that he undercut and kneed her in the face repeatedly, that he put her in a headlock and strangled her multiple times, and that he prevented her from leaving the motel room. Deputy Ochab testified that the victim was very emotional, was very scared, and appeared as though she had been through a lot of trauma. He took photos depicting the victim's injuries, including bruising, swelling, and red linear marks on her left neck. The surveillance video corroborated the victim's account of breaking out and going through a glass window to escape from defendant. Given this overwhelming evidence of guilt, it does not affirmatively appear that it is more probable than not that the error in the admission of the evidence was outcome-determinative. Thus, defendant was not denied a fair trial by the erroneous admission of the evidence.

## IV. CPS INVOLVEMENT

Defendant argues that the trial court erred by precluding him from cross-examining the victim about whether Children's Protective Services (CPS) had threatened her with the loss of either or both of her children if she did not cooperate in getting defendant imprisoned. Specifically, defendant argues that the trial court erred by ruling that the threats were hearsay not subject to an exception. Defendant contends that he was denied a fair trial because the evidence would have demonstrated on cross-examination the victim's bias or prejudice and her motive to testify and to be "less than truthful." We agree that the trial court erred but conclude that the error was harmless.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 289 (2014). Such statements are "not offered for a hearsay purpose because [their] value does not depend upon the truth of the statement[s]." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974). Again, defense counsel wanted to cross-examine the victim about an out-of-court threat allegedly made by a CPS worker to the victim to demonstrate the effect that the statement might have had on the victim—i.e., that it may have given her "a reason to be less than truthful." The evidence was not going to be offered to prove that CPS would remove the child with whom the victim was pregnant or another child if defendant was not imprisoned, but instead to demonstrate that the victim had a motive to lie—in other words, to attack her credibility. Therefore, the trial court erred by ruling that use of the evidence in this manner called for inadmissible hearsay and excluding the evidence on this ground.

It does not affirmatively appear, however, that it is more probable than not that the error was outcome-determinative. *Lukity*, 460 Mich at 495-496. Even assuming that the victim had a motive for wanting defendant to be imprisoned, her testimony, Deputy Ochab's testimony, and the photographic evidence as described by Deputy Ochab provided overwhelming evidence that the victim was assaulted. Indeed, defense counsel acknowledged in his closing argument that

"something happened back there," but argued that defendant did not have the intent to kill or the intent to do great bodily harm. Accordingly, reversal is not required.

## V. SHIFTING BURDEN OF PROOF

Defendant argues that the prosecutor's closing argument impermissibly shifted the burden of proof to him to establish a defense and deprived him of a fair trial. We disagree.

This issue is unpreserved because defendant did not object at trial. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial error are reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant argues that the prosecutor impermissibly shifted the burden of proof to him with two specific statements during closing arguments. First, in the context of addressing the elements of the offense of AWIGBH, the prosecutor argued: "There's no doubt that he assaulted. I mean, there's no evidence to the contrary that there was, that, that he's not the one that assaulted her. He walked out the door right after she busted out the window."

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Although the prosecutor stated that there was no contrary evidence that defendant was the person who assaulted the victim, the argument did not impermissibly shift the burden to defendant to demonstrate his innocence. "[A] prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment." *Id*. at 464. Further, a prosecutor "may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Id*. Moreover, even assuming the statement was improper, defendant cannot establish that he was prejudiced by the error given defense counsel's acknowledgment in his opening statement that "we do know that they were at the motel together." Moreover, the record reflects that the trial court instructed the jury after closing arguments that the burden of proof was on the prosecution to prove each element beyond a reasonable doubt and that defendant was not required to prove his innocence or do anything. The trial court also instructed the jury that the lawyers' statements and arguments are not evidence. It is presumed that the jury followed those instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). That the jury acquitted defendant of two of the five counts charged suggests that the jury carefully weighed the evidence and followed the trial court's instructions.

Second, defendant argues that the following statement that was made while the prosecutor was discussing the jury instruction regarding flight impermissibly shifted the burden of proof to him and violated his right against self-incrimination:

> There's, also, a jury instruction in regards to flight. There's been some evidence the defendant ran away or hid after the alleged crime. Now, you can watch him leave. If he didn't do anything wrong, I guess, why did he leave. Just wait and give your side of the story. The evidence, that evidence doesn't prove guilt.
>
> A person may run or hide for innocent reasons such [as] panic, mistake, or fear. When you, when you're watching, when you watch the video and you see

-9-

him walk out, it doesn't look like panic. I mean, it doesn't look like fear other than maybe the fear of going to jail because he comments to her, you know, don't do this . . . don't do this because you know I'm going to jail.

However, a person may also run because of consciousness of guilt. And that's what this is.

The prosecutor told the jury that evidence of flight did not prove guilt. He drew a reasonable inference from the evidence, however, that defendant's flight after the incident demonstrated his consciousness of guilt. A prosecutor's statement that flight can be interpreted as evidence of guilt was accurate. *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). Contrary to defendant's argument, the prosecutor's comment was not an impermissible comment on his failure to come forward with an explanation to the police in violation of his right against compelled self-incrimination. Defendant has failed to establish plain error.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective by (1) failing to request sequestration of witnesses, because the victim and at least two witnesses were allowed to be in the courtroom and hear the testimony of other witnesses, which made their testimony conform to the prosecution's theory of the case; (2) failing to request a limiting instruction under M Crim JI 4.11 on the use of other-acts evidence and approving the proposed instructions; (3) similarly failing to request a limiting instruction on the use of tether evidence; and (4) with respect to the charge of AWIGBH, failing to request an instruction on a lesser offense of felonious assault. We disagree.

Defendant did not file a motion in the trial court for a new trial or an evidentiary hearing, or file a timely motion to remand in this Court. Consequently, the issue whether defense counsel was ineffective is not preserved for appeal. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

This Court reviews an unpreserved assertion of ineffective assistance of counsel for errors apparent on the record. *People v Hieu Van Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019). "Generally, an ineffective-assistance-of-counsel claim presents a 'mixed question of fact and constitutional law.' " *Id.*, quoting *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error." *Hieu Van Hoang*, 328 Mich App at 63.

Both the United States and Michigan constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. This state has adopted the federal constitutional standard for an ineffective assistance of counsel claim as set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994). To obtain a new trial, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. However, this Court "cannot insulate the review of counsel's performance by

-10-

calling it trial strategy." *Id*. A defendant has the burden of establishing the factual predicate of an ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

This Court will not substitute its own judgment for that of counsel or use the benefit of hindsight in assessing the defense counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Defense counsel is not ineffective when he or she fails to make an objection that lacks merit. *Matuszak*, 263 Mich App at 58.

*Failure to Request Sequestration of Witnesses*

Defendant argues defense counsel was ineffective by failing to request sequestration of witnesses. The entirety of his argument is that "it was prejudicial to [defendant] in that at [sic] victim and at least two witnesses (Officer Ochab and Mr. Singh) were allowed to be in the courtroom and hear the testimony of other witnesses. It made testimony conform to the evidence in support of the prosecution's case." Defendant fails to support this assertion with relevant legal authority or cogent argument. Other than making the factually unsupported assertion above, defendant makes no effort to explain how counsel's failure to request sequestration prejudiced his case. This cursorily briefed argument is considered abandoned. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2011) (holding that an appellant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority") (cleaned up). Further, there is no evidence that the two witnesses modified their testimony because they heard the victim testify. Defendant has not shown a reasonable probability that the outcome of the proceedings would have been different had the witnesses been sequestered.

*Failure to Request a Limiting Instruction on Use of Other-Acts Evidence*

Defendant argues that his counsel was ineffective by failing to request a limiting instruction regarding other-acts evidence, citing M Crim JI 4.11. However, M Crim JI 4.11a is applicable to evidence of other acts of domestic violence, and provides:

> (1) The prosecution has introduced evidence of claimed acts of domestic violence by the defendant for which [he / she] is not on trial.

> (2) Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed such acts.

> (3) If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the [offense / offenses] for which [he/she] is now on trial.

> (4) You must not convict the defendant here solely because you think [he / she] is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him/her] not guilty.

It was unreasonable for defense counsel to not request a limiting instruction for the other acts of domestic violence. However, the failure to request the instruction does not undermine

-11-

confidence in the verdict or suggest a reasonable probability of a different outcome. Even without considering the other-acts evidence, the evidence against defendant was overwhelming for the reasons described above. Moreover, as noted by the prosecution, the jury acquitted defendant of the most serious charged offense of assault with intent to murder, as well as of the charge of AWIGBH by strangulation, which demonstrates that the jury did not convict defendant solely because it thought defendant was guilty of other bad conduct. There is not a reasonable probability that the outcome of the proceedings would have been different had the trial court given a limiting instruction for the other-acts evidence.

### *Failure to Request a Limiting Instruction on Use of Tether Evidence*

Defendant argues only that "[f]or the same reasoning as to the failure to seek a limiting instruction on the use of prior acts evidence, trial counsel was deficient in failing to request a limiting instruction on the use of tether evidence." He does not identify or apply any reasoning regarding the other-acts evidence to the tether evidence.

The jury was unaware of the reason defendant wore a tether, and the jury was aware that defendant had a propensity to commit domestic violence as a result of the admission of evidence under MCL 768.27b. For the reasons stated above regarding the other-acts evidence, there is not a reasonable probability that the outcome of the proceedings would have been different had defense counsel again requested a limiting instruction regarding the tether evidence after proofs were presented. The evidence of guilt was overwhelming.

### *Failure to Request an Instruction on Lesser Included Offenses of AWIGBH*

Defendant argues that defense counsel was ineffective by failing to request instructions on felonious assault and assault and battery as lesser included offenses of AWIGBH. The failure to request an instruction on a lesser included offense generally is considered to be a matter of trial strategy with which this Court will not interfere. See *People v Sardy*, 216 Mich App 111, 116; 549 NW2d 23 (1996).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). A necessarily included lesser offense is "an offense which contains some of the elements of the greater offense, but no additional elements," such that the "greater offense cannot be committed without committing the lesser offense." *People v Norman*, 184 Mich App 255, 259-260; 457 NW2d 136 (1990). A defendant is entitled to an instruction on a necessarily included lesser offense if a rational view of the evidence would support it; however, a defendant is not entitled to an instruction on a cognate lesser offense. *People v Cornell*, 466 Mich 335, 357, 359; 646 NW2d 127 (2002). A cognate lesser offense shares some common elements with and is of the same class as the greater offense, but also has elements not found in the greater offense. *People v Perry*, 460 Mich 55, 61; 594 NW2d 477 (1999). A trial court's failure to give a lesser-included-offense instruction is harmless error if "the evidence did not clearly support a conviction for the lesser included [offense]." *Cornell*, 466 Mich at 365-366. "There must be more than a modicum of evidence" to show that the defendant could have been convicted of the lesser included offense. *People v Cheeks*, 216 Mich App 470, 479-480; 549 NW2d 584 (1996).

-12-

First, citing *People v Wheeler*, 480 Mich 965 (2007), defendant argues that felonious assault is a lesser included offense of AWIGBH. Defendant's reliance on *Wheeler* is misplaced. *Wheeler* notes that felonious assault is a *cognate* lesser offense of assault with intent to commit murder. *Id*. It does not stand for the proposition that felonious assault is a necessarily included lesser offense of AWIGBH. To convict on a charge of felonious assault, the assault must be made with a dangerous weapon. MCL 750.82; *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). However, a person may be found guilty of AWIGBH without the use of a weapon. See MCL 750.84. Because a weapon must be involved to support a felonious assault conviction, it is possible to commit the greater offense without committing the lesser offense. Defense counsel was not ineffective by failing to request an instruction on felonious assault.

Second, defendant argues that assault and battery is a lesser included offense of AWIGBH. Defendant relies on *People v Fox*, 507 Mich 936 (2021), a case in which our Supreme Court assumed, without deciding, that assault and battery is a lesser included offense of AWIGBH. In *Fox*, our Supreme Court held that a defendant was denied a fair trial because the trial court denied the defendant's request for a jury instruction on assault and battery. *Id*. Our Supreme Court assumed that assault and battery was a lesser included offense of AWIGBH because the prosecution waived the issue when it conceded that argument in the trial court. *Id*. Our Supreme Court cited *People v Haynie*, 505 Mich 1096 (2020), a case in which the Court assumed that assault and battery was a lesser included offense of assault with intent to murder because the prosecution conceded the issue, to support its conclusion. *Fox*, 507 Mich at 936. Presuming that assault and battery was a lesser included offense of AWIGBH, our Supreme Court in *Fox* explained that the trial court erred when it denied the jury instruction in reliance on the prosecution's argument that the intent element of AWIGBH was not disputed at trial. *Id*. However, neither *Fox* nor *Haynie* answers the question whether assault and battery is a lesser included offense of AWIGBH.

In contrast to *Fox* and *Haynie*, defense counsel in this case did not request an instruction on assault and battery as a lesser included offense of AWIGBH and, therefore, the prosecution did not concede at trial that assault and battery is a lesser included offense of AWIGBH. Consequently, the prosecution did not waive the issue.[6]

"The elements of AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation

---

[6] On appeal, the prosecution does not specifically concede that assault and battery is a lesser included offense of AWIGBH. However, the prosecution does state that defense counsel was not "ineffective for failing to request a jury instruction on the lesser-included offense of assault and battery for the two counts of" AWIGBH. Even assuming that the prosecution's statement on appeal can be viewed as a concession that assault and battery is a lesser included offense of AWIGBH and that defense counsel erred by failing to request an instruction on assault and battery, we are not bound by the prosecution's confession of error. *People v Propp (On Remand)*, 340 Mich App 652, 666; 987 NW2d 888 (2022), lv app pending, held in abeyance ___ Mich ___ (2023). The prosecution, like defendant, has cited no caselaw on appeal for the proposition that assault and battery is a lesser included offense of AWIGBH.

-13-

omitted).  As this Court stated in *People v Haynie*, 327 Mich App 555, 561-562; 934 NW2d 71 (2019), rev'd 505 Mich 1096:

> Comparatively, assault is "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." Battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." In short, assault and battery contains an element that assault with intent to murder does not contain, i.e., a harmful or offensive touching. [Citations omitted.]

In *People v Davis*, unpublished per curiam opinion of the Court of Appeals, issued June 29, 2023 (Docket No. 360300), this Court addressed this issue in the context of the defendant's argument that defense counsel erred by failing to request an instruction on assault and battery as a lesser included offense of AWIGBH.  This Court, after noting that our Supreme Court's decisions in *Fox* and *Haynie* had assumed, without deciding, that assault and battery is a lesser included offense of AWIGBH, stated:

> The relevant caselaw that addresses this issue is *People v Kynerd*, 314 Mich 107; 22 NW2d 90 (1946).  In that case, the Supreme Court held by analogy that assault and battery was not a lesser included offense of assault with a dangerous weapon because battery was not an element of AWIM.  *Id.* at 117.  Notably in *Haynie*, Justice Clement encouraged the Court to reconsider whether *Kynerd* was correctly decided, *Haynie*, 505 Mich at 1096 (CLEMENT, J., concurring), but the Court did not overrule the decision.  Unlike *Fox* or *Haynie*, the prosecution in this case did not concede that assault and battery is a lesser included offense of AWIGBH.  This Court is bound by the Supreme Court's decision in *Kynerd*.  See *People v Walker*, 330 Mich App 378, 386 n 3; 948 NW2d 122 (2019).  Therefore, defendant was not entitled to a jury instruction on assault and battery as a lesser included offense of AWIGBH.
>
> Because defendant was not entitled to a jury instruction on assault and battery as a lesser included offense, defense counsel was not ineffective for failing to request the instruction because defense counsel is not ineffective for failing to advance meritless arguments. . . .  [*Davis*, unpub op at 8.]

Similarly, here, assault and battery contains an element that AWIGBH does not contain—a harmful or offensive touching.  We follow the analogous reasoning in *Davis*, unpub op at 8, and conclude that assault and battery is not a lesser included offense of AWIGBH, that defendant was not entitled to a jury instruction on assault and battery as a lesser included offense, and that defense counsel was not ineffective by failing to request the instruction.[7]

Alternatively, assuming without deciding that assault and battery is a lesser included offense of AWIGBH, and assuming that a rational view of the evidence would allow a jury to

---

[7] "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

conclude that defendant committed assault and battery, defendant has not rebutted the presumption that counsel employed reasonable strategy. "[T]his Court has specifically recognized that an all-or-nothing defense is a legitimate trial strategy. . . . When the defense's trial strategy is to obtain an outright acquittal, an instruction or argument on a lesser offense may reduce the defendant's chance of acquittal." *People v Allen*, 331 Mich App 587, 610; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021); see also *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986) ("[T]he decision not to request lesser offenses was a matter of trial strategy."); *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982) (holding that defense counsel was not ineffective by failing to request a lesser-included-offense instruction because "[t]he decision to proceed with an all or nothing defense is a legitimate trial strategy"). Defense counsel's argument at trial demonstrates his effort to convince the jury that the victim was not credible and that the photographs of her injuries were not consistent with her description of events. He argued that the prosecution failed to present medical testimony regarding the victim's injuries or proof that she suffered great bodily harm. He argued, "We're here because they're saying he intended to murder someone, trying to kill someone, strangle them. Not that he battered someone . . . . It's hard to determine what that was with, with all the conflicting testimony. But, but not intend [sic] to murder, not to strangle, not great bodily harm. That is why we are here." Defense counsel could have thought that the best chance for an acquittal was to not seek an assault and battery instruction, and requesting an instruction on assault and battery would have been inconsistent with the strategy of attempting to force an all-or-nothing verdict. Indeed, counsel's strategy was partially successful as the jury acquitted defendant of one count of AWIGBH by strangulation.

## VII. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel